THOMAS WELLING ET AL., EXECUTORS, v. HENRY J. MARSH ET AL.

*Mortgage—Bankruptcy—Assignee's sale—Purchase by mortgagor.*

A mortgagor went into *voluntary* bankruptcy 60 days after executing the mortgage, which was given to secure a *bona fide* debt. The assignee filed a bill to set aside the mortgage as a fraud upon the creditors, which was dismissed, and after the discharge of the bankrupt he bid in the land at assignee's sale, subject to the mortgage, and received a deed therefor. In a suit to foreclose the mortgage he set up as a defense his hopeless insolvency at the time of its execution, of which fact the mortgagee had notice, and who for that reason urged the giving of the security, with knowledge that its execution would precipitate proceedings in bankruptcy; and charged that the mortgage was in fraud of the bankrupt act.

*Held,* that the bankrupt obtained the same title to the premises that he held after executing the mortgage, purchasing the equity of redemption cleared of the cloud placed upon it by the bankruptcy proceedings; and that his attempted defense was unconscionable.

Appeal from Oceana. (Russell, J.) Argued June 21, 1887. Decided July 7, 1887.

Foreclosure of mortgage. Defendants Marsh appeal. Decree affirmed. The facts are stated in the opinion.

*T. S. Gurney,* for complainants.

*J. H. Standish,* for appellants.

MORSE, J. The bill in this case was filed to foreclose a mortgage executed by the defendants Henry J. Marsh and Annie O. Marsh, his wife, to William R. Welling.

The undisputed facts are as follows:

William R. Welling was a *bona fide* creditor of the defendant Henry J. Marsh, and on or about January 30, 1877, obtained a judgment against the said Marsh for $2,039.

Some time in February of the same year, Welling levied an attachment upon property belonging to Marsh for the purpose of collecting said judgment. February 27, 1877, Marsh and wife executed the mortgage in question, and Welling, by his attorney, one Doolittle, released the attachment.

April 27, 1877, Marsh filed his petition of bankruptcy in the United States court for the Eastern district of New York. Upon this voluntary petition he was adjudged a bankrupt, and Charles Jones was appointed his assignee. In the schedules filed in the bankruptcy proceedings the land in question was stated to be subject to this mortgage. Welling never proved or filed his debt, secured by this mortgage, in the court of bankruptcy.

In October, 1877, he commenced proceedings in Oceana county, Michigan, where the land is situated, to foreclose the mortgage by advertisement. Jones, the assignee in bankruptcy, restrained the same by injunction before sale.

In March, 1878, Marsh was discharged from bankruptcy.

April 1, 1879, this land was sold by the assignee in bankruptcy to Marsh for $40. The sale was public, and pursuant to notice, and subject to the Welling mortgage.

October 25, 1879, Jones, as assignee, filed a bill in the United States district court for the Southern district of New York to have this mortgage set aside on the ground that it was made in fraud of the creditors of Marsh. In this suit the case came on for hearing upon pleadings and proofs, and a decree was entered dismissing the bill, without costs, upon

the written stipulation of complainant's solicitor. After the sale a deed of the lands embraced in this mortgage was executed by Jones, and delivered to Marsh, who claims that he afterwards, for some purpose, returned it to Jones. It became lost or mislaid, and January 7, 1885, Jones, who had never been discharged from his trust as assignee in bankruptcy, executed and delivered a second deed of the same premises to Marsh. This last deed does not refer to the mortgage.

The bill in the present cause was filed in the circuit court for the county of Oceana in chancery, January 8, 1881. The time to answer was continued and extended from time to time, by stipulation of the solicitors of the parties, to await the result of the suit in the United States court, wherein Jones was seeking to set aside the mortgage. After the assignee's bill had been dismissed, the defendants failing to answer, their default was taken, and a decree of sale obtained. On motion of Marsh this decree was afterwards set aside, and the case reopened. He and his wife then answered, alleging that, when the mortgage was executed, Marsh was hopelessly insolvent and a bankrupt, which fact was well known to William R. Welling; that Welling, because of such insolvency of Marsh, urged the making of this security, although informed and well knowing that the giving of said mortgage would have a tendency to precipitate bankruptcy proceedings; and that such mortgage was in fraud of the bankrupt act. They also averred in such answer that, by the proceedings in bankruptcy heretofore noted, Marsh had acquired the title to the lands described in said mortgage free and discharged from lien of said mortgage.

A more unconscionable defense was never interposed in a court of justice. The statement of it in brief is sufficient. Marsh executes this mortgage to secure Welling for an admitted good-faith debt. It was founded upon a loan of money, handed out from time to time by Welling to Marsh as a

friend, at Marsh's request.   Just in time, as Marsh claims, to defeat this security as a preference under the bankrupt law, he voluntarily enters bankruptcy.   He hands the property over to his assignee subject to this mortgage as a good-faith incumbrance, and thereby keeps his creditors from availing themselves of the amount of the mortgage.   Saving it from his creditors, his assignee puts the land up at auction, and Marsh buys it subject to complainant's mortgage, as it is sold, for $40.   Having thus acquired the equity of redemption in the premises, and taken the value of the mortgage interest in the same out of the bankrupt estate, he now endeavors by this defense to acquire the whole title to the land.

Not satisfied, by his own showing, with defrauding the creditors out of their distributive share of the amount of this mortgage, he now seeks the aid of the court to cheat the estate of Welling out of the whole debt, which he admits was at the date of the mortgage a valid one, and which has not been paid, or any part thereof satisfied.

A court of equity has no time or inclination to hear such a defense as this, and the court below very properly rendered a decree for the complainants.

Nor do the facts have any tendency to show a legal defense. There is no evidence except that of Marsh, which is not admissible under the statute as being in relation to matters equally within the knowledge of Welling, who was dead at the time Marsh gave the testimony, showing that Welling knew, or had any reason to know, that Marsh was insolvent.

It is also shown, by the widow and also the niece of Welling, that he was not in the state of New York at the time Marsh claims he had the talk with Welling about the giving of the mortgage, his financial strait, and the result that probably would follow the making of the same.   If their testimony be true, the evidence of Marsh is false.   I prefer, under the circumstances, to take their statement in the matter.   Doolittle, the attorney who drew the mortgage, is

dead, and in the choice between Marsh and these women it seems natural to believe the ones against whom there is no suspicion of dishonesty.

The mortgage, then, was honestly and lawfully taken for a *bona fide* debt, with no thought upon Welling's part of wronging any one. It was perfectly good, when made, against not only Marsh, but all the world. If the subsequent action of Marsh, voluntarily taken, avoided it as against creditors, which it is not necessary to discuss, it did not affect it as against Marsh, or those claiming under him outside of the bankruptcy proceedings. The bankrupt court refused to declare the mortgage void as against creditors, and in its sale of the interest of the bankrupt in the premises it directly, by reference to the schedules and by its notice of sale, recognized the lien of this mortgage as a valid one.

When Marsh bought at the bankrupt sale, he obtained the same title to the premises that he held in the same after the execution of the mortgage, and before he went into bankruptcy. He purchased the equity of redemption cleared of the cloud which he himself had placed upon it by going into bankruptcy.

The decree of the court below is affirmed, with costs.

The other Justices concurred.